IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| MICHAEL MCEARCHEN, | : | MOTION TO VACATE |
| GDC No. 1236987, | : | 28 U.S.C. § 2255 |
| Movant, | : | |
| | : | CRIMINAL ACTION NO. |
| v. | : | 4:18-cr-0001-MHC-WEJ-1 |
| | : | |
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
| Respondent. | : | 4:19-CV-0155-MHC-WEJ |

**FINAL REPORT AND RECOMMENDATION**

Through counsel, movant Michael McEarchen has filed a 28 U.S.C. § 2255 Motion to Vacate challenging his 2018 guilty-plea conviction and sentence in this Court for murder for hire. (Mot. [45].) The matter is before the Court on the Motion [45], the Government's Response [48], and movant's Reply [49]. For the following reasons, **IT IS RECOMMENDED** that the § 2255 Motion be **DENIED**, and that no certificate of appealability issue.

**I.   BACKGROUND**

On January 3, 2018, movant was indicted in this Court for one count of murder for hire, in violation of 18 U.S.C. § 1958(a) ("Count 1"). (Indict. [9] 1.) Movant retained counsel to represent him in his criminal proceedings. (Notice [12]

1.) Ultimately, movant pled guilty to Count 1 pursuant to a written Plea Agreement. (See Dkt. Entry [36]; Plea Agreement [37] 1.)

In the Plea Agreement, movant expressed a desire to plead guilty to Count 1 of the Indictment. (Plea Agreement 1.) In exchange, the government agreed "not to bring further criminal charges against [movant] related to the charges to which he is pleading guilty." (Id. at 4.) The agreement further provided that movant "underst[ood] that this provision does not bar prosecution by any other federal, state, or local jurisdiction." (Id.) The government also agreed to recommend that movant be sentenced at the low end of the adjusted guideline range. (Id. at 6.)

In a provision titled "Limited Waiver of Appeal," the Plea Agreement provided that movant waived the right to appeal or collaterally attack his conviction and sentence, subject to several exceptions.[1] (Plea Agreement 12.) The Plea Agreement also provided that "[t]here are no other agreements, promises, representations, or understandings between [movant] and the government." (Id. at 13.) Movant and his attorney signed the Plea Agreement at the bottom, and

---

[1] The Court notes that it is unnecessary to determine the potential applicability of the collateral attack waiver in movant's Plea Agreement because the government has declined to enforce the waiver and instead has responded to the merits of the § 2255 Motion. (See Resp. [48] 6.)

movant signed a separate certification that he had read the Plea Agreement, carefully reviewed it with his attorney, understood all of its terms and conditions, and that no promises or inducements had been made to him other than those discussed in the Plea Agreement. (Id. at 14.)

At his change-of-plea hearing, movant testified that he understood that the Plea Agreement contained the contract between him and the government, and that he had signed the Plea Agreement and the attached certification. (Tr. [43] 2.) This Court informed movant of the maximum penalties he faced, including a statutory-maximum sentence of ten years' imprisonment, up to three years' supervised release, and a fine of up to $250,000. (Id. at 6-7.) This Court also explained in detail the operation of the advisory Sentencing Guidelines, including that it would be the final arbiter of movant's guideline range, it was not bound by any sentencing recommendation made by the parties, and it had the authority to impose a sentence up to the statutory maximum. (Id. at 6-11, 17-18.) Movant testified that he understood and wished to proceed with his plea. (Id. at 11, 18.)

The government read the Plea Agreement into the record, including the provision that "the government agrees not to bring further criminal charges against [movant] related to the charges for which he's pleading. [Movant] understands, however, that this does not bind state or local jurisdictions or any other federal

3

district." (Tr. [43] 13-14.) The government also read the provision that "the parties agree that there are no other agreements, promises, representations or understandings between [movant] and the government outside of this written Plea Agreement." (Id. at 17.) This Court asked movant if the Plea Agreement summarized by the government was the "total and complete plea agreement in [his] case," and whether he was "reasonably well satisfied with it," and movant answered "[y]es, sir" in each instance. (Id.) Movant also testified that he had fully discussed his case with his attorney and was satisfied with his attorney's assistance. (Id. at 20-21.)

Ultimately, this Court accepted movant's guilty plea, finding that movant made the plea voluntarily with full knowledge of the charge against him and the consequences of his plea, that the plea was not the product of any form of coercion, that there had been no promises made to movant other than those contained in the Plea Agreement, and that there was a sufficient factual basis to support the plea. (Tr. [43] at 23-24.)

At sentencing, this Court determined that movant's guideline range was 121 to 151 months' imprisonment based on a total offense level of 29 and a criminal history category of IV. (Tr. [44] 3.) However, because the statutory maximum term of imprisonment was 10 years, movant's final guideline range was 120 months'

4

imprisonment. (Id.) In arguing for a downward departure, movant asserted that, under the 120-month guideline calculation, he had functionally pled guilty to a statutory-maximum sentence and would receive no benefit for his acceptance of responsibility and prompt guilty plea. (Id. at 5, 9-10.)

The government responded that, while movant was receiving no tangible benefit on this charge, he did benefit under the Plea Agreement because "the Government could have charged [movant] with some of those other pending crimes, including the drug crime that is sitting out there in Bartow County." (Tr. [44] 11.) The government continued "[s]o by entering into this plea the government is moving forward and away from [movant's] case and letting this case resolve all of his pending potential charges that are federal." (Id.)

This Court sentenced movant to 120 months' imprisonment, to be followed by three years' supervised release. (Tr. [44] 16; see also Judgment [42] 1-2.) Movant did not pursue a direct appeal of his convictions and sentences. The instant § 2255 motion followed.

## II.  DISCUSSION

In his § 2255 motion, movant enumerates three grounds for relief:

    1(a). his plea counsel was ineffective for failing to effectively engage in the plea negotiation process and accurately inform him of the maximum possible legal sentence;

5

      1(b).  his plea counsel was ineffective for failing to properly raise and litigate the issues in Grounds 2 and 3;

      2.  the government breached the plea agreement and committed prosecutorial misconduct when an FBI agent participated in movant's state criminal proceedings; and

      3.  his guilty plea was not knowingly and voluntarily entered with a full understanding of the consequences of his plea because the only consideration offered in exchange for his plea was the government's illusory offer to "move away from him entirely."

(Mot. to Vacate [45] 4-8.) Specifically, as to Ground 1, movant alleges that his plea counsel erroneously informed him that he faced a potential life sentence if he lost at trial, indicated that he had negotiated a favorable guilty plea, and advised movant to accept that plea. (Id. at 2.) Movant contends that counsel's misadvice about his potential sentencing exposure caused him to enter a guilty plea for which he received a statutory-maximum sentence. (Id. at 2-3.)

With respect to Ground 2, movant emphasizes that the government stated at sentencing that the consideration for his guilty plea was that the government would move "forward and away from [movant]." (Mot. to Vacate 3.) Movant contends that the government breached this promise and the Plea Agreement when FBI Agent Bryan Hill testified on behalf of the State of Georgia in aggravation of punishment in movant's state criminal proceedings for aggravated stalking of the

same victim as the instant case. (Id.) Movant argues that this was a material breach of the Plea Agreement and prosecutorial misconduct requiring vacatur of movant's conviction and sentence. (Id. at 6-7.)

In Ground 3, movant argues that Agent Hill's participation in his state criminal proceedings rendered the only consideration for his guilty plea illusory. (Mot. to Vacate 7-8.) Accordingly, movant asserts that his plea was made without full knowledge of the consequences of the plea and was per se unknowing and involuntary. (Id.) To his § 2255 Motion, movant attaches transcripts of his change-of-plea and sentencing hearings in this case, as well as a transcript of his plea and sentencing proceedings in State v. McEarchen, No. 18-cr-0373 (Cherokee Cty. Super. Ct. Jan. 11, 2019).

The government responds[2] that movant has not shown that plea counsel failed to communicate any plea offer to him or that it was rational under the circumstances to reject the plea offer when the government could have brought additional charges against movant. (Resp. [48] 11.) The government further

---

[2] In light of this Court's oral Orders granting the government's motions for extensions of time to respond to the § 2255 Motion, movant's Motion to Treat the Government's Failure to Respond as Consent to the Vacatur [47] is **DENIED AS MOOT**.

7

responds that both the text of the Plea Agreement and its oral statements at sentencing made clear that it agreed not to bring additional federal charges against movant but made no promise about its action or inaction in unrelated proceedings. (Id. at 12-13.) Accordingly, the government argues that nothing in the Plea Agreement prevented Agent Hill from testifying and it did not breach the Plea Agreement. (Id. at 13-14.) The government asserts that movant's third ground for relief fails for the same reasons as Ground 2, and, in any event, plea counsel's failure to foresee that an FBI agent would be called as a witness in a state proceeding eight months after movant's plea was entered was not deficient performance. (Id. at 14.)

Movant replies that it was reasonable to interpret the government's statement that it was moving "forward and away" from his case to preclude it from voluntarily appearing in state court to speak in aggravation of his state sentence. (Reply [49] 2.)

Congress enacted § 2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. United States v. Jordan, 915 F.2d 622, 625 (11th Cir. 1990). Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed

on four different grounds, including "that the sentence was imposed in violation of the Constitution or laws of the United States." Id.; see also 28 U.S.C. § 2255. "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). A § 2255 movant bears at all times the burden of proving his entitlement to relief. Beeman v. United States, 871 F.3d 1215, 1221-23 (11th Cir. 2017). An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); Fontaine v. United States, 411 U.S. 213, 215 (1973) (per curiam).

"[C]ollateral review is not a substitute for a direct appeal . . . ." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam). "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a 28 U.S.C. § 2255 challenge" unless a movant "overcome[s] this procedural default by showing both cause for his default as well as demonstrating actual prejudice suffered as a result of the alleged error." Black v. United States, 373 F.3d 1140, 1142 (11th Cir. 2004). "[T]o show cause for procedural default, [a § 2255 movant] must show that some objective factor external to the defense prevented him or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to his own conduct."

9

Lynn, 365 F.3d at 1235.  To demonstrate actual prejudice, a movant must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Reece v. United States, 119 F.3d 1462, 1467 (11th Cir. 1997) (quotation marks omitted).  As an alternative to showing cause and actual prejudice, a § 2255 movant may overcome procedural default if "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Lynn, 365 F.3d at 1234-35 (quotation marks omitted).

As an initial matter, movant's claim of prosecutorial misconduct in Ground 2 and his claim that his guilty plea was unknowing and involuntary in Ground 3 are procedurally defaulted because movant failed to raise them on direct appeal.  See Black, 373 F.3d at 1142.  Movant does not allege cause and prejudice to overcome the default nor does he assert his actual innocence.  Movant's waiver of his appellate rights pursuant to the appeal waiver provision in the Plea Agreement is not cause for excusing his procedural default.  See Giddens v. United States, No. 7:10-cr-00028-HL-TQL, 2012 WL 6628411, at *2 (M.D. Ga. Nov. 28, 2012), R&R adopted, 2012 WL 66117278 (M.D. Ga. Dec. 19, 2012) (collecting cases).  Because movant chose to waive his appellate rights, he cannot establish that a factor external to the defense and not attributable to his own conduct precluded his obtaining appellate review.  See id.; Lynn, 365 F.3d at 1235.  As a result, the substantive

claims underlying Grounds 2 and 3 are procedurally defaulted. In any event, movant's claims fail on the merits for the reasons discussed below.

The Supreme Court decision applicable in an ineffective-assistance case is Strickland v. Washington, 466 U.S. 668 (1984). See Premo v. Moore, 562 U.S. 115, 121 (2011). To make a successful claim of ineffective assistance of counsel, a defendant must show both that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. Strickland, 466 U.S. at 687; see also Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) (holding that, if the defendant makes an insufficient showing on the prejudice prong, the court need not address the performance prong, and vice versa). Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. See Strickland, 466 U.S. at 687–88. Prejudice occurs when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Strickland's two-part test applies in the context of guilty pleas. Lafler v. Cooper, 566 U.S. 156, 162-64 (2012). Because a voluntary, unconditional guilty plea generally waives all nonjurisdictional defects in the proceedings, a defendant who enters a guilty plea can attack only "the voluntary and knowing nature of the plea." Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992) (per curiam).

A defendant can overcome the otherwise voluntary and intelligent character of his guilty plea only if he can establish that the advice that he received from counsel in relation to the plea was not within the range of competence demanded of attorneys in criminal cases, in violation of Strickland. Premo, 562 U.S. at 121, 126. To establish prejudice in the context of a guilty plea, a defendant must show that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 129 (quotations omitted). This means that "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Diveroli v. United States, 803 F.3d 1258, 1263 (11th Cir. 2015).

In evaluating the knowingness and voluntariness of a plea, the representations of the defendant at the plea hearing, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). "There is a strong presumption that the statements made [by a defendant] during the plea colloquy are true." United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994). Therefore, "when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988).

A § 2255 motion may be used to enforce promises made in a plea agreement. United States v. Al-Arian, 514 F.3d 1184, 1191 (11th Cir. 2008). A court must decide whether the government's actions are inconsistent with what the defendant reasonably understood when he entered his guilty plea. Id. The court must use objective standards to resolve a dispute over the meaning of terms in a plea agreement. Id. Parol evidence may be considered only where the language of the agreement is ambiguous, or government overreaching is alleged. Id.

Here, movant has not shown that his plea counsel's performance was constitutionally ineffective. As to Ground 1, movant has not shown prejudice stemming from his counsel's alleged misadvice that he would face a life sentence if convicted at trial. This Court instructed movant at the change-of-plea hearing that the statutory maximum term of imprisonment he faced was 10 years, that the Court was not bound by any sentencing recommendation, and that it could impose any sentence up to the 10-year statutory maximum. (See Tr. [43] 6-11, 17-18.) Movant testified that he understood the penalties he was facing. (Id. at 11, 18.) Movant has not met his "heavy burden" to show that his sworn statements were false. Rogers, 848 F.2d at 168. Consequently, the record belies movant's claim that he would not have pled guilty if he had been correctly advised about his sentencing exposure. Additionally, movant has not shown that it would have been

rational under the circumstances to reject the plea offer where the government could have brought additional federal charges. See Diveroli, 803 F.3d at 1263.

To the extent that movant alleges in Grounds 1(b) and 2 that his plea counsel was ineffective for failing to raise a claim that the government breached the Plea Agreement, no breach of the Plea Agreement occurred. In exchange for movant's guilty plea, the government agreed not to bring further criminal charges related to the offense of conviction. (Plea Agreement 4.) The Plea Agreement specifically warned movant that this provision did "not bar prosecution by any other federal, state, or local jurisdiction." (See id.) Nothing in the Plea Agreement could reasonably be read to bar Agent Hill from testifying at movant's state sentencing proceeding. Additionally, the government's statements at sentencing were entirely consistent with the unambiguous terms in the Plea Agreement. The government stated that it was "moving forward and away from [movant's] case and letting this case resolve all of his pending potential charges *that are federal*." (Tr. [44] 11 (emphasis added).) Because the government did not breach the Plea Agreement, movant's counsel was not ineffective for failing to raise the issue. See Denson v. United States, 804 F.3d 1339, 1342 (11th Cir. 2015) (holding that counsel is not ineffective for failing to raise meritless objections).

14

Finally, to the extent that movant alleges in Grounds 1(b) and 3 that his plea counsel was ineffective for failing to raise a claim that his plea was unknowing and involuntary because the consideration for his guilty plea was illusory, this claim is meritless. As discussed above, the consideration for movant's guilty plea was the government's agreement not to bring additional federal criminal charges against him. Movant has not submitted any evidence that the government breached this promise. Moreover, the record belies movant's claim that his guilty plea could reasonably have been predicated on an understanding that the government was precluded from cooperating in his state criminal proceedings. See Al-Arian, 514 F.3d at 1191. Movant signed the Plea Agreement and certified that he had reviewed the Plea Agreement with his attorney and understood all of its terms. (Plea Agreement 13-14.) Movant further certified that no other promises or inducements had been made to him other than those contained in the Plea Agreement. (Id. at 14.) At movant's change-of-plea hearing, the government read the relevant provisions into the record, and movant agreed that this was the total and complete plea agreement in his case. (Tr. [43] 17.) As discussed above, the Plea Agreement contained no provision barring Agent Hill from testifying in a state proceeding and it was not reasonable for movant to read entirely new terms into the Plea Agreement. (See generally Plea Agreement [37]); Al-Arian, 514 F.3d at 1191. Because movant

15

cannot show that his plea was unknowing and involuntary, his plea counsel was not ineffective for failing to raise the same. Denson, 804 F.3d at 1342.

Accordingly, **IT IS RECOMMENDED** that the § 2255 Motion [45] be **DENIED**. No evidentiary hearing is warranted. Fontaine, 411 U.S. at 215.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).

> When the district court denies a [motion to vacate] on procedural grounds without reaching the prisoner's underlying constitutional claim . . . a certificate of appealability should issue only when the

16

> prisoner shows both that jurists of reason would find it debatable whether the [motion] states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Jimenez v. Quarterman, 555 U.S. 113, 118 n.3 (2009) (citing Slack, 529 U.S. at 484) (internal quotation marks omitted).

A certificate of appealability should be denied because the resolution of the issues presented is not debatable. If the District Court adopts this recommendation and denies a certificate of appealability, movant is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." 28 U.S.C. foll. § 2255, Rule 11(a).

## IV.  CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the Motion to Vacate [45] be **DENIED**, and that no certificate of appealability issue.

The Clerk of Court is **DIRECTED** to terminate the referral to the undersigned United States Magistrate Judge.

**SO RECOMMENDED**, this 26th day of May, 2020.

_/s/ Walter E. Johnson_
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE